# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 1894 | **DATE** | 8/26/2010 |
| **CASE TITLE** | Poulsen Roser A/S vs. Jackson & Perkins Wholesale, Inc et al. | | |

**DOCKET ENTRY TEXT**

Defendant Donald Hachenberger's Motion to Dismiss for Lack of Jurisdiction [32] is granted without prejudice, and Defendant Glenda Hachenberger's Motions to Dismiss for Lack of Personal Jurisdiction [34] is granted with prejudice.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Before the Court are Defendant Donald Hachenberger and Defendant Glenda Hachenberger's Motions to Dismiss for Lack of Personal Jurisdiction. For the following reasons, the Court grants both motions.

## BACKGROUND

Plaintiff Poulsen Roser A/S ("Poulsen") filed its complaint alleging trademark infringement against Defendants Jackson and Perkins Wholesale, Inc. ("J&P Wholesale"), Jackson and Perkins Company ("J&P Company") (J&P Wholesale and J&P Company are referred to collectively as "J&P"), Park Seed Wholesale, Inc. ("Park Seed Wholesale"), Geo W. Park Seed Co., Inc. ("Park Seed Company") (Park Seed Wholesale and Park Seed Company are referred to collectively as "Park Seed"), J&P Acquisition, Inc. ("J&P Acquisition"), and Donald and Glenda Hachenberger (collectively the "Hachenbergers," and collectively with the corporate defendants "Defendants") on March 25, 2010. In its complaint, Poulsen seeks to hold the Hachenbergers jointly and severally liable for its claims of statutory and common law trademark infringement and unfair competition against the corporate defendants. Poulsen alleges that because J&P and Park Seed have operated as a single, integrated business enterprise and the Hachenbergers utilize J&P and J&P Acquisition as mere alter egos or instrumentalities, the corporate veils of J&P, Park Seed, and J&P Acquisition should be pierced and the Hachenbergers should be held jointly and severally liable for all liability of J&P and J&P Acquisition.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Donald Hachenberger is a 5% shareholder and Corporate Secretary of J&P Acquisition, a Delaware corporation that maintains its principal place of business in South Carolina. (R. 40-1, Donald Hachenberger Aff., ¶ 15.) Glenda Hachenberger is a 5% shareholder and director of J&P Acquisition, though she is not responsible for or involved with the management or day-to-day operations of the corporation. (R. 35-2, Glenda Hachenberger Aff., ¶ 15.) J&P Wholesale and J&P Company, Delaware corporations with their principal places of business in South Carolina, are wholly-owned subsidiaries of J&P Acquisition. (R. 40-1, D. Hachenberger Aff., ¶ 16.) Donald Hachenberger also holds 100% of the shares of Park Seed Company. *Id.* at ¶ 17. Park Seed Wholesale is a wholly-owned subsidiary of Park Seed Company. *Id.* at ¶ 18. Park Seed Company and Park Seed Wholesale are South Carolina corporations with their principal places of business in South Carolina. (R. 1-1, Complaint, ¶¶ 4-5.) Corporate officers and staff located in South Carolina manage the business activities of J&P Wholesale, J&P Company, Park Seed Company and Park Seed Wholesale. (R. 40-1, Donald Hachenberger Aff., ¶¶ 16, 18.)

Each of the corporate Defendants in this action has filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of South Carolina. Poulsen acknowledges that its claims against J&P Company, Park Seed Wholesale, Park Seed Company and J&P Acquisition are stayed. The Hachenbergers are the only Defendants in this action who are not debtors in the bankruptcy proceedings.

## LEGAL STANDARD

### I. 12(b)(2) Motion to Dismiss

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See Central States v. Phencorp Reinsurance Co.,* 440 F.3d 870, 875 (7th Cir. 2006); Fed.R.Civ.P. 12(b)(2). In ruling on a motion to dismiss pursuant to Rule 12(b)(2), the Court may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi-Synthlabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). When the Court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a prima facie case of personal jurisdiction. *See GCIU-Employer Retirement Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009); *Central States,* 440 F.3d at 876-77. As such, the plaintiff bears the burden of establishing that personal jurisdiction exists. *See GCIU-Employer Retirement,* 565 F.3d at 1023; *Central States*, 440 F.3d at 876. In determining whether the plaintiff has met its burden, courts must resolve all factual disputes in the plaintiff's favor. *See Central States*, 440 F.3d at 878 (court reads complaint liberally, in its entirety, and with every inference drawn in plaintiff's favor).

The due process test for personal jurisdiction requires that a defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This "purposeful availment" standard ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *See Burger King v. Rudzewicz,* 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *see also Hanson,* 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

The Supreme Court has labeled two types of jurisdiction – general and specific. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state." *GCIU-Employer Retirement,* 565 F.3d at 1023; *see also*

*Helicopteros Nacionales de Colombia*, 466 U.S. at 416. On the other hand, specific jurisdiction "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *GCIU-Employer Retirement,* 565 F.3d at 1023 (citation omitted).

## II. Veil-Piercing and Alter Ego Theories Pursuant to Illinois Law

"[A]lthough the law of the state of incorporation applies when a party seeks to substantively pierce a corporation's veil, Illinois law governs the analysis where a party uses veil piercing to establish personal jurisdiction." *Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 69 (Ill. App. Ct. 2009). In Illinois, "[p]iercing the corporate veil is not favored and in general, courts are reluctant to do so." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). "In order to pierce a corporate veil under Illinois law, a plaintiff must show that: (1) there is 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;' and (2) that 'adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" *Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1039 (N.D. Ill. 2003) (internal citations omitted.) "Courts consider a laundry list of factors to determine whether there is a 'unity of interest' between . . . a corporation and a controlling share-holder or other dominant personality . . . , but the focus is on whether the corporations have respected corporate formalities--respected their separateness from each other--or whether one was a sham acting at the whim of the other." *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 611 (7th Cir. 2009). Likewise, "the rule for determining when respecting the corporate form would sanction fraud or promote injustice is not clearcut, but '[i]f a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts,' that is sufficient, because 'it is inequitable that shareholders set up such a flimsy organization to escape personal liability.'" *Id.* (applying Illinois law) (internal citations omitted). *See also Great Lakes Overseas, Inc. v. Wah Kwong Shipping Group, Ltd.*, 990 F.2d 990, 996 (7th Cir. Ill. 1993)

"In order to find that defendants have a unity of interest, Illinois courts look at several factors: (1) whether the corporation has failed to maintain adequate corporate records or to comply with corporate formalities; (2) whether the other defendants have commingled the corporation's funds or assets; (3) whether the corporation was undercapitalized; and (4) whether the other defendants have treated the assets of the corporation as their own." *Firstar Bank, N.A.*, 249 F. Supp. 2d at 1039. With regard to corporate unity of interests, the Seventh Circuit has held that, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).

## ANALYSIS

Poulsen does not argue that the Court has general or specific jurisdiction over the Hachenbergers individually, but instead contends that the Court may exercise jurisdiction over the Hachenbergers through a theory of veil piercing or alter ego. In its Complaint, Poulsen alleges that "on information and belief" the Hachenbergers are the sole shareholders of J&P Acquisition, which is in turn the sole shareholder of J&P. (R. 1, Compl., ¶¶ 67-68.) Poulsen also alleges "on information and belief" that the corporate formalities have not been followed for J&P Acquisition and that it is void under Delaware Law. *Id.* at ¶ 70. Poulsen further alleges "on information and belief" that the Hachenbergers have "undercapitalized, dominated the affairs of, and failed to maintain corporate records and formalities for J&P and J&P Acquisition, and the Hachenbergers have therefore used J&P Acquisition and J&P as mere alter egos or instrumentalities." *Id.* at ¶ 71. Poulsen also alleges that the Hachenbergers are shareholders of Park Seed and that "on information and belief" Park Seed and J&P "have intertwined operations, personnel, and accounts and have commingled assets with one another in a manner constituting a single integrated business enterprise." *Id.* at ¶ 10. Poulsen seeks to hold the Hachenbergers jointly

and severally liable for all liability of J&P Acquisition and J&P because they used these entities as "mere alter egos or instrumentalities." *Id.* at ¶ 106. Defendants Donald and Glenda Hachenberger challenge personal jurisdiction based on these allegations and Poulsen has responded to their challenges and presented evidentiary materials to support their claim of personal jurisdiction. The Court will accordingly address personal jurisdiction with respect to Glenda Hachenberger and Donald Hachenberger in turn.

### A. Glenda Hachenberger

Glenda Hachenberger does not contest that the Court has personal jurisdiction over J&P and Park Seed. Instead, Glenda Hachenberger asserts that Poulsen has not established a prima facie case of jurisdiction via a veil-piercing or alter ego theory that refutes the allegations in her affidavit. While Poulsen "need only make a 'minimally viable' showing that the [corporations] are a sham" and "[i]t is enough to show that the allegations are not 'patently without merit'" to establish a prima facie case of jurisdiction, Poulsen has not done so with respect to Glenda Hachenberger. *See Nelsen v. Morris*, No. 03 C 7174, 2004 WL 868398, *3 (N.D. Ill. 2004) (citing *YKK USA, Inc. v. Baron*, 976 F.Supp. 743, 745-47 (N.D. Ill. 1997); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 135-136 (N.D.Ill. 1989)).

In order to pierce the corporate veil under Illinois law, Poulsen must demonstrate a "unity of interest" between the corporations and the individual, Glenda Hachenberger. *Firstar Bank, N.A.*, 249 F. Supp. 2d at 1039. In an attempt to demonstrate a "minimally viable showing" that the corporate defendants are a sham, Poulsen has submitted evidence relating to the organization and activities of the corporate defendants. Much of the information that Poulsen claims supports a prima facie case of veil piercing or alter ego derives from a complaint filed in the South Carolina Court of Common Pleas by Karen Jennings. Allegations contained in a complaint, however, are not evidence. *Tibbs v. City of Chicago,* 469 F.3d 661, 663 n. 2 (7th Cir. 2006).[1] More importantly, the evidence submitted by Poulsen is almost entirely devoid of reference to Glenda Hachenberger.

Defendants submit evidence that Glenda Hachenberger is a 5% shareholder and director of J&P Acquisition and that her stock in J&P Acquisition, combined with Donald Hachenberger's stock, constitutes 100% of the voting rights for the company. Where corporate formalities have been observed, however, mere ownership of a corporation does subject an individual owner to personal jurisdiction in a foreign forum. *Reimer Express World Corp.*, 230 F.3d at 944. Poulsen has presented no evidence to show that Glenda Hachenberger has not "respected [her] separateness" from the corporate defendants. *Lay-Com, Inc.*, 580 F.3d at 611. Indeed, while Poulsen contends that "the Hachenbergers" failed to maintain J&P and J&P Acquisition in good standing, there is no evidence to tie Glenda Hachenberger to this failure. Indeed, critical to the resolution of Defendant Glenda Hachenberger's motion to dismiss, Poulsen has submitted no evidence to contradict her assertions that: (i) she has not been involved in the management or day-to-day affairs of any of the corporate defendants; (ii) she has never had any control or authority over the operations of the corporate defendants; (iii) she has never been a signatory on any financial accounts maintained by any of the corporate defendants or been privy to how the corporate funds are handled; and (iv) to the best of her knowledge, none of the corporate defendants has ever been operated as her alter ego or instrumentality. (R. 35-2, Glenda Hachenberger Aff, ¶¶ 15-17, 19, 24.) While the Court must resolve factual disputes in favor of Poulsen, "if a defendant's affidavit contesting jurisdiction is not refuted by a counter-affidavit filed by the plaintiff, the facts alleged in the defendant's affidavit are taken as true." *Wessel Co, Inc. v. Surfers Publications*, 633 F. Supp. 729, 730 (N.D. Ill. 1983).

Poulsen has also failed to present any evidence to show that Glenda Hachenberger commingled funds or assets of the corporate defendants, undercapitalized the corporate defendants, or treated the corporate defendants' assets as her own. Poulsen submits an affidavit of Mr. Olesen who asserts that in conducting business with J&P and Park Seed the "companies" have combined Poulsen's accounts to such a manner that "Poulsen is unable to determine which entity pays for which debt." (R. 43-3, Olesen Aff., ¶ 6.) Mr. Olesen does not, however, refer to any involvement by Glenda Hachenberger and the evidence submitted by Poulsen does not refute Glenda

---

[1] In addition, Poulsen has also submitted an unauthenticated timeline. (R. 43-2, Annex B).

Hachenberger's assertion that she has no personal involvement in the companies' finances.  With respect to undercapitalization, Poulsen's argument focuses on Donald Hachenberger and the acquisition of Park Seed.  (R. 43-1, Pls.' Resp. at 16.)  Indeed, the only evidence in this regard which even refers to Glenda Hachenberger is an acquisition agreement between Park Seed and Karen Jennings to which Glenda Hachenberger was not a party.  The agreement contains a provision indicating that Evergreen SC, LLC is a company owned by Donald and Glenda Hachenberger, but the agreement does not evidence any undercapitalization of the corporate defendants.  (R. 43-9, Annex I.)  Finally, the only evidence submitted by Poulsen to support its contention that Glenda Hachenberger treated assets of the corporate defendants as her own is her personal guarantee of J&P's obligations under a supply agreement.  Defendants, however, cite no legal authority to support the proposition that a personal guaranty is sufficient evidence to demonstrate an individual's treatment of a corporation's assets as her own.

In sum, reading the complaint in Poulsen's favor and resolving factual disputes in Poulsen's favor, Poulsen has failed to present any evidence to the Court that Glenda Hachenberger failed to maintain adequate corporate records, commingled funds or assets of the corporate defendants, undercapitalized the corporate defendants or treated the assets of the corporate defendants as her own.  *See Firstar Bank, N.A.*, 249 F. Supp. 2d at 1039.  *See also Salon Group, Inc. v. Salberg*, 156 F.Supp.2d 872, 877 (N.D. Ill. 2001) (evidence submitted by plaintiff that representatives of corporate defendant had attended meetings with second corporate defendant combined with conclusory arguments insufficient to establish personal jurisdiction pursuant to an agency/control theory).  The Court accordingly grants Glenda Hachenberger's motion to dismiss for lack of personal jurisdiction.

### B.  Donald Hachenberger

Donald Hachenberger moves to dismiss the complaint against him for lack of personal jurisdiction because (i) the Court does not have general or specific jurisdiction over him based on his contacts with Illinois, (ii) Poulsen has not presented evidence to show that an alter ego or instrumentality theory is applicable, and (iii) Poulsen has not shown minimum contacts with Illinois because it failed to allege that Donald Hachenberger or any of the corporate defendants sold the product at issue in Illinois.  In response, Poulsen contends that it has established general jurisdiction over J&P and Park Seed and that it has demonstrated a prima facie case for veil piercing or alter ego jurisdiction over Donald Hachenberger.  Because the issue of whether Poulsen has established jurisdiction over J&P and Park Seed is dispositive, the Court addresses it first.

The allegations in Poulsen's complaint relating to his contacts with Illinois are minimal.  Poulsen alleges that Defendants' "acts of infringement have caused injury in this district to Poulsen and its intellectual property rights" and that venue is proper because "a substantial part of the events or omissions giving rise to the claim and the threatened and actual harm to Poulsen occurred in this district by reason of Defendants' conduct." (Complaint, ¶¶ 9-10.)  The only allegation in the complaint that specifically references Illinois is that "[a]s a result of its widespread use throughout the United States, including in Illinois, the SPELLBOUND mark became associated exclusively with Poulsen's high quality roses, and Poulsen possesses significant common law trademark rights in the SPELLBOUND mark." *Id.* at ¶ 47.  It is only once a defendant moves to dismiss a complaint, however, that a plaintiff must demonstrate the existence of personal jurisdiction.  *Purdue Research Foundation,* 338 F.3d at 782.

In response to Donald Hachenberger's argument that the Court lacks personal jurisdiction over him, Poulsen contends that J&P and Park Seed conduct business in Illinois with a "fair measure of permanence and continuity" and are therefore subject to general jurisdiction in Illinois.  (R. 43-1, Pls.' Resp. at 8.)  To support this contention, Poulsen points to evidence that: (i) J&P and Park Seed advertise their roses under the INGRID BERGMAN and SPELLBOUND brands on the internet; (ii) J&P Wholesale's website lists several Chicago-area dealers of its products; (iii) J&P Company's website shows shipping and planting information for the Chicago area and availability for consumers to purchase products online; and (iv) Seed Wholesale's website advertises a

sales representative for, among other states, Illinois.[2] The evidence cited by Poulsen, however, merely establishes that Park Seed and J&P advertise their products on the internet and have the ability to sell products in Illinois through dealers. Poulsen has not pointed to evidence of a single sale that occurred in Illinois, nor has it provided any evidence to the Court that demonstrates the extent of Park Seed and J&P's alleged business contacts with Illinois. As a result, Poulsen has not made a prima facie showing that J&P and Park Seed conduct "continuous and systematic general business" with Illinois. *See Richter v. Instar Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1009 (N.D. Ill. 2009) (continuous and systematic contacts with Illinois not demonstrated where "plaintiff's argument that the defendant's website merits general jurisdiction hinges solely on the potential of Illinois customers to purchase products from defendant's website").

In the past, courts in this district have addressed personal jurisdiction via internet activities through a "sliding scale" approach that divides Internet activities into three categories:

> (1) those in which the defendant clearly transacts business in foreign jurisdictions over the Internet; (2) those in which a defendant has posted information on the Internet, but has no further communication with potential customers via the Internet; and (3) those in which the defendant operates an interactive web site that allows defendant and potential customers in foreign jurisdictions to communicate regarding defendant's goods or services. Under this framework, courts can appropriately exercise personal jurisdiction over those defendants who fall into the first category by actively conducting business on the Internet. *See, e.g., CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1264-65 (6th Cir. 1996) (on-line contracts between defendant and plaintiff sufficient to exercise jurisdiction over defendant); *International Star,* 1999 WL 300285 at *6 (jurisdiction proper where defendant generated revenue through direct commercial transactions with Illinois residents and derived profit from web-related activity); *Zippo,* 952 F.Supp. at 1125-26 (defendant contracted with 3,000 individuals, representing two percent of defendant's customer base and seven Internet access providers in forum state)." *Id.* at 932-33.

*Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F.Supp.2d 928, 932-33 (N.D. Ill. 2000). Here, while Poulsen has demonstrated that Park Seed and J&P advertise their products nationally on the internet, there is no evidence that any sales actually occur through its website. Indeed, while Poulsen asserts that Annex E and Annex G show the ability for consumers to purchase products online, this is not clear from the website printouts submitted to the Court. Annex E is national planting and shipping information for J&P Company Website. There is a "View Cart" link at the top of the web site and under the "Shopping" category three links are present: (i) "How to order"; (ii) "Catalog Quick Order"; and (iii) "Request a Catalog." (R. 43-5, Annex E.) There is no indication, however, of whether or how a customer can order products to be shipped to Illinois via the internet. Similarly, Annex G shows "Zone Information" and "Fall Shipping Schedules" for Park Seed. (R. 43-7, Annex G.) Again, there is a "View Cart" link and list of departments, but it is unclear whether products are actually available for sale to Illinois residents on the website. *Id.* It is significant that there is no evidence of any products available for sale on the websites, prices of the defendants' products, or any indication that the completion of sale to a consumer in Illinois occurs via the internet as opposed to via the telephone numbers or catalogues both websites reference. *See Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F.Supp.2d 928, 933 (N.D. Ill. 2000) (where defendant did not take orders over website and or enter into contracts on its website, but instead instructed customers to fill out a service agreement and mail it to the national dealer, business activity was insufficient to confer general personal jurisdiction); *Caterpillar, Inc. v. Miskin Scraper Works, Inc.*, 256 F.Supp.2d 849, 853 (C.D. Ill. 2003) (complaint dismissed for lack of personal jurisdiction where defendant's website facilitated business by "providing information, advertisements and contact information" but did not provide the price of products or "allow for direct contractual relationships"). *Cf. Jennings v. AC Hydraulic A/S,*

---

[2] Defendant Donald Hachenberger challenges the website printouts submitted by Poulsen as unauthenticated and inadmissible hearsay. Because the Court finds that Poulsen has not made a prima facie showing of personal jurisdiction, however, the Court need not address this argument.

383 F.3d 546, 550 (7th Cir. 2004) ("[p]remising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of website across the country").

Moreover, in addition to failing to present evidence that actual sales of products to consumers in Illinois can occur via the Park Seed or J&P websites, Poulsen has also failed to provide any other evidence of the corporate defendants' contacts with Illinois. *See NeoMedia Technologies, Inc. v. AirClic, Inc.*, 2004 WL 848181, *4 (N.D. Ill. 2004) ("non-website factors can tip the jurisdictional scales in regards to an otherwise insufficient website"). This is especially significant in light on the Seventh Circuit's decision in *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010), in which the court noted that while "[s]ome circuits have followed *Zippo* when 'electronic contacts' over the Internet are at issue . . . . [W]e hesitate to fashion a special jurisdictional test for Internet-based cases." Indeed, in *Tamburo* the Seventh Circuit cited to *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F.Supp.2d 1154, 1161 (W.D. Wis. 2004), in which the district court declined to adopt *Zippo* as a substitute for the traditional minimum-contacts analysis. *Id.* at 703 n. 7. The court in *Hy Cite* explained:

> Moreover, regardless how interactive a website is, it cannot form the basis for personal jurisdiction unless a nexus exists between the website and the cause of action or unless the contacts through the website are so substantial that they may be considered "systematic and continuous" for the purpose of general jurisdiction. Thus, a rigid adherence to the *Zippo* test is likely to lead to erroneous results.

*Hy Cite Corp.,* 297 F.Supp.2d at 1160. Here, Poulsen has presented no evidence to the Court to demonstrate the extent of the corporate defendants' contacts, in any, with Illinois through its website.

For the foregoing reasons, reading the Complaint in Poulsen's favor and resolving factual disputes in Poulsen's favor, Poulsen has not met its burden to show a prima facie case of personal jurisdiction with respect to Donald Hachenberger. The Court accordingly grants Defendant Donald Hachenberger's motion to dismiss for lack of personal jurisdiction without prejudice.

## CONCLUSION

For the foregoing reasons, the Court (i) grants Defendant Glenda Hachenberger's motion to dismiss for lack of personal jurisdiction with prejudice, and (ii) grants Defendant Donald Hachenberger's motion to dismiss without prejudice.